**Mary Elizabeth (Belk) ROUNDTREE, Respondent,**

v.

**Gary Lee BELK, Appellant.**

No. 18968.

Missouri Court of Appeals, Southern District, Division Two.

July 13, 1994.

Nancy Steffen Rahmeyer, Pratt, Fossard & Rahmeyer, Springfield, for appellant.

Gail L. Fredrick, Fredrick, Rogers & Vaughn, P.C., Springfield, for respondent.

CHARLES B. BLACKMAR, Senior Judge.

This is an unpleasant case involving the modification of a child custody order. The trial court heard the evidence and made a decision. We perceive no legal error, and do not believe that it would be appropriate to substitute our judgment for his in a situation in which no solution may be entirely satisfactory. We affirm the essence of the judgment, but remand for modification of the order relating to visitation rights.

The marriage of Gary Lee Belk and Mary Elizabeth Belk, now Roundtree, was dissolved on August 1, 1991. The trial court decreed joint legal custody of their one child, Jennifer, born February 8, 1986. Physical custody of Jennifer was awarded to the mother for the period January 16 through July 14, and to the father from July 15 through January 15, of each year.

The father now lives in Greene County and has remarried. His new wife has custody of her teenage daughter. The mother lives in Neosho, in Newton County, and is married to Glenn Roundtree. Roundtree has custody of his two children, and he and Jennifer's mother are the parents of her young half-sister.

In October of 1992, while Jennifer was staying with her father, he noticed some problems. At the end of October she loudly protested when Glenn Roundtree arrived to take her for a weekend visit with her mother. The father also observed changes in her be-

havior, and her first-grade teacher discussed some behavior problems with him. He then sought counseling for Jennifer with Karen Richardson, a professional counselor. After her second visit, Richardson advised the father that Jennifer had told her that Roundtree had abused her sexually, and that "he touches me in my privates. He did it in church too, our very first time." Richardson reported what Jennifer had told her to the child abuse hot line. She continued to counsel with Jennifer up to the time of trial.

The Division of Family Services conducted an investigation, and an order of protection was entered against Roundtree. The order is no longer in force. The father agreed that the mother could have visitation on alternate weekends, provided that Roundtree have no contact with Jennifer.

On January 22, 1993, Jennifer was interviewed by Corporal Renee Buck of the Neosho police department. Corporal Buck asked her about her allegations that Roundtree had touched her genitals, and Jennifer answered that her father had told her to say those things, and that they did not happen.

On December 30, 1992, the father filed a motion to modify the decree so as to give him full legal and physical custody of Jennifer, with the mother to have supervised visitation. On July 25, 1993, the mother filed a counter motion to modify, seeking full legal and physical custody for herself, with the father to have visitation rights.

The trial court heard evidence. Both the father and the mother produced witnesses who testified that Jennifer was well cared for while in their custody. Roundtree testified, absolutely denying that he had abused Jennifer in any way. He specifically said that he and her mother had never taken Jennifer to church. Jennifer understandably did not testify, but Richardson and Buck testified without objection as to what Jennifer had told them.

The trial judge on July 19, 1993, entered an order sustaining the mother's motion and overruling the father's motion. The docket entry stated as follows:

"The court finds that the allegations of [the father's] Motion to Modify are not true; that the allegations of [the mother's] Motion to Modify are true; and that the best interests of the minor child are not met by the present custody plan."

■ The father argues in his first point that there was no substantial evidence of change in circumstances sufficient to justify a modification which would substantially abridge the custodial rights granted him in the initial decree. He points to uncontradicted testimony that he has provided a safe, clean and sanitary home was undisputed, and that "the only testimony that the minor child had not been molested ... was done with the prodding of [the mother]." He suggests that the only expert testimony in the record supports his position, but the court is not obliged to credit expert testimony. Roundtree, whom the trial court apparently believed, testified positively that he did not molest Jennifer in any way. We are in a poor position to take issue with the trial judge on questions of credibility. To the extent that the father relies on the claim that Jennifer was abused by Roundtree, his appeal must fail.

We conclude, furthermore, that the trial court could find sufficient change in circumstances to justify a change in custody, so that one parent would have continuing physical custody during the school year. The trial judge could properly conclude that the divided custody arrangement was not working, because of the behavior problems Jennifer demonstrated. These problems manifested themselves during the father's period of custody. The record showed no similar problems while the mother had custody. The father argues that the evidence of a good situation in the mother's home is self-serving, and there are obvious reasons why her evidence might be difficult to refute, but the trial judge heard the witnesses and they were subject to cross-examination so that he could evaluate their testimony. The judge stated emphatically at the close of the evidence that the divided physical custody was not working, and it would not be appropriate for us to substitute our judgment for his on a record which presents so many questions of credibility. We can sympathize with the father's complaint that he is being penalized

for seeking counseling for Jennifer, but the trial judge must still determine where the best interests of the child lie. The sole issue is the child's welfare, which does not necessarily depend on a weighing of the relative virtues and faults of her parents. *See Shoemaker v. Shoemaker,* 812 S.W.2d 250, 253 (Mo.App.1991).

 The father argues in his second point that the trial judge erred in not affording him substantial and specified summer vacation time with Jennifer. We agree. We find no indication in the findings that he did not consider the father a suitable person to have visitation rights.

Section 452.375.3, RSMo Cum.Supp.1993, provides as follows:

"[I]t is the public policy of [Missouri] to assure children frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage.... In order to effectuate this policy, the court shall determine the custody arrangement which will best assure ... such frequent and meaningful contact between the child and each parent, as is indicated in the best interests of the child under all relevant circumstances."

Because of the acrimony which inheres in the present controversy we believe that the decree should spell out the visitation rights, and that the father should have uninterrupted visitation for half of the time during the summer months, in one or more segments, in addition to the alternate weekend and holiday visitations during the rest of the year. The mother indicated at the hearing that she would be agreeable to this kind of a schedule. *See Siegenthaler v. Siegenthaler,* 761 S.W.2d 262, 266 (Mo.App.1988); *In re Marriage of Mayfield,* 780 S.W.2d 139, 142 (Mo.App. 1989).

In *Siegenthaler* the court of appeals fixed the visitation periods and affirmed a modified decree. We believe that it is better to let the trial court determine the details. Perhaps the parties can agree on a decree to be entered conforming to our specifications.

We therefore affirm the judgment, except for the provisions of visitation during school vacation, and remand the case to the trial court for proceedings consistent with this opinion.

CROW and GARRISON, JJ., concur.