**In re the Matter of Lauren Tressa SNOKE, Plaintiff,**

**H. Edward SNOKE, Appellant,**

v.

**Michelle A. BORDENARO, Respondent.**

No. WD 50761.

Missouri Court of Appeals,
Western District.

Jan. 16, 1996.

Alison Blessing, Liberty, guardian ad litem.

John Hager, Kansas City, for appellant.

Thomas R. Alley, Liberty, for respondent.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and HANNA, JJ.

HANNA, Judge.

The father, appellant, appeals from the court's judgment of February 15, 1995, which adopted the Findings and Recommendations of the Commissioner of the Family Court, awarding the mother unsupervised and gradually unrestricted visitation of their daughter.

In January 1992, the trial court entered a Declaration of Paternity declaring Edward Snoke the natural born father of Lauren, born February 3, 1989. The court awarded custody of Lauren to her father, limiting the mother to restricted and supervised visitation due to her abuse of alcohol and prescription drugs. The order allowed the mother to have supervised, restricted visitation with Lauren "so long as respondent is not under the influence of drugs or alcohol." The court further ordered the mother to pay $100 per month in child support.

The mother filed a motion to modify in June 1993, seeking custody of Lauren. However, at trial she requested only unsupervised visitation. The father filed a cross-motion of modification seeking further restrictions on the mother's visitation and increased child support. Findings and recommendations were issued by the Commissioner of the Family Court after a hearing in January 1995. The Commissioner's order allowed the mother unsupervised visitation, subject to temporary safeguards to ensure that the mother did not abuse intoxicants in her daughter's presence. Specifically, the Commissioner ordered that no more than 48 hours before a scheduled visitation, the mother was to provide the father with written results of a blood or urine test. If the test results were positive for alcohol, an unprescribed substance, or a prescribed substance in an amount greater than the prescribed dosage, then the mother would forfeit her visitation rights. This restriction was to be lifted on June 30, 1995.[1] The trial court adopted these findings and recommendations without a hearing. The court ordered unsupervised visitation on alternate weekends, alternate holidays, four continuous weeks each summer, and each year on the child's birthday.

The father asserts that the court erred in adopting the Commissioner's Findings and Recommendations, because the mother failed to meet her burden of showing proof of treatment and rehabilitation, as required by § 452.400.2, RSMo 1994, to warrant allowing unsupervised and unrestricted visitation. Additionally, he urges that the order does not serve the best interests of the child, because unrestricted and unsupervised visitation would endanger the child's safety and welfare in violation of § 452.400.1, RSMo 1994.

■ Our standard of review is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), and we must uphold the trial court's judgment unless it lacks substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law. *Id.* at 32.

Section 452.400.2, RSMo 1994, provides in pertinent part:

When a court restricts a parent's visitation rights or when a court orders supervised visitation because of allegations of abuse or domestic violence, a showing of proof of treatment and rehabilitation shall be made to the court before unsupervised visitation may be ordered.

■ Here, as in any other case involving the modification of visitation rights, the paramount concern of the court is whether the

---

1. In the final two points of this appeal, the father asserts that the court erred in awarding the mother unsupervised and gradually unrestricted visitation, because the order was a conditional and alternative judgment, and was prospective in nature. The father conceded at oral argument that both of these points are moot because all visitation has, in fact, been supervised since the order was entered.

order serves the best interests of the child. *See Ansevics v. Cashaw,* 881 S.W.2d 247, 252 (Mo.App.1994). We give great deference to the trial court's assessment of what serves the best interests of the child, because it is in the better position to judge the credibility of the witnesses, as well as their sincerity, character, and other intangibles not completely revealed by the record. *See Sinopole v. Sinopole,* 871 S.W.2d 46, 48 (Mo.App.1993). This deference is critical in domestic cases, where testimony is often sharply divergent and lawyers are prone to reargue the facts on appeal. *Amedei v. Amedei,* 801 S.W.2d 491, 494 (Mo.App.1990). Thus, we will affirm the decision of the trial court unless we are firmly convinced that the welfare of the child requires some other disposition. *Gaston v. Gaston,* 776 S.W.2d 465, 467 (Mo.App.1989).

█ The original court order restricted the mother's visitation because she abused alcohol and prescription drugs. Evidence of the mother's treatment and rehabilitation since this order consisted primarily of the testimony of two witnesses. The mother testified that since the original order of January 1992, she has overcome her addictions. She testified that she has been attending Alcoholics Anonymous and Narcotics Anonymous meetings, and has been receiving psychological counseling on and off since January 1992. She further testified that she has been receiving counseling from a minister, beginning approximately five months prior to the January 1995 trial.[2] The only prescription medication she currently takes is hydrocotone for a cyst on her right ankle.

Other favorable testimony supporting unsupervised visitation was from the mother of a family with whom the respondent has been living since October 1994. This mother testified that she has never seen the respondent under the influence of alcohol or narcotics. She further testified that she allows the respondent to babysit her four children. Additionally, the father testified that when he picks Lauren up from visitation with the mother, he has not seen her under the influ-

ence of any intoxicant for at least one year prior to the January 1995 hearing. However, this contact with the mother is limited to the infrequent occasions that he sees her in person.

There was evidence that the mother continued to have a problem with intoxication after she began receiving counseling from a minister and moved in with the family in October 1994. Specifically, the respondent's mother testified that she suspected that her daughter was "under the influence of something" when she came to her house once in December 1994, when the minor child was present. Also, the father stated that he believed that the mother had been drinking on several occasions when he talked with her on the phone. However, this testimony was controverted by the mother, and since the trial court was in the best position to weigh the conflicts, we must defer to its assessment of the credibility of these witnesses. *Gaston,* 776 S.W.2d at 467.

Certain facts were uncontested. The mother has had a problem with alcohol since 1981, dating back to her senior year in high school. She has been in four rehabilitation programs since she first got involved with alcohol and drugs. The trial court restricted the mother's visitation in its January 1992 order because of her alcohol and drug abuse.

Contrary to the mother's testimony, the documented evidence and her reluctant admissions reveal that her involvement with drugs and alcohol does not appear to have changed. On June 27, 1993,[3] she was found unconscious outside of a hotel and taken to Liberty Hospital where she admitted to consuming alcohol, Xanax, and Elavil. She did not recall how she ended up outside the hotel. Although the staff offered her help, the record states that [s]he repeatedly refused consultation with North Hills Mental Health or other alternate mental health facility regarding her polydrug abuse. In response to this offer of help the mother stated, "I have been to four of them and they

---

2. Her mother contradicted this testimony, saying that she needs constant counseling and help but she has not been seeking it.

3. The mother filed her motion originally requesting custody on June 13, 1993. Many of the events recounted here have occurred since that date.

have not helped. I know what I have to do." The doctor's assessment was acute alcohol intoxication and a history of polydrug abuse.

In August 1994, the mother was involved in an automobile accident and taken to North Kansas City Hospital. At trial the mother testified that she was uncertain as to whether she had indulged in drugs or alcohol that day. However, the hospital records showed that she admitted to the staff that she had consumed a large amount of alcohol, smoked marijuana, and was taking Elavil and Xanax. She spent several hours in the Emergency Department while she sobered up. Her diagnosis was "substance abuse."

The mother admits to becoming intoxicated at home on various occasions in 1992 and 1993. She admits to frequenting different bars. She admits going to her mother's home to see her daughter once while under the influence of drugs and once with a male friend who had been drinking. She also admits that she has used marijuana, Elavil, and Xanax since the original order was entered. She listed five different doctors who have prescribed Xanax for her. She admits that she is addicted to prescriptive drugs, but has received no treatment for this addiction since January 1992. On December 19 and 21, 1992, she went to the North Kansas City Hospital emergency room and requested a narcotic pain medication. She was given some medication the first time, but was refused the second time.

She does not have a driver's license because of a DUI conviction, although she continues to drive. She once had a car accident with her daughter in the car. In recent years she has been employed at various jobs and discharged from most of them, although she resigned from one job on her own accord after a couple of weeks. A number of her jobs, including her job at the time of trial, have been at establishments that serve alcohol. Further, she has not maintained a stable home environment, having moved frequently during this time period. She has not been able to pay any child support since the order of January 1992.

On the one hand, we have the mother's testimony that she has taken control of her life and has been attending meetings and receiving counseling for her drug and alcohol addictions in the five months before trial. Contrasting this testimony are many documented instances of serious drug and alcohol abuse that occurred after the original decree of January 1992, as well as destructive admissions of a long standing addiction, coupled with evidence of an unstable lifestyle. *See, e.g., Wilson v. Wilson,* 873 S.W.2d 667, 670 (Mo.App.1994). Although we give more than lip-service to the proposition that the trier of fact is in a better position to pass on the credibility of the witnesses, we can only conclude that here the child's best interests are not served by the trial court's humane attempt to unite the mother and child. Given the evidence, we are firmly convinced that the welfare of the child requires a different disposition.

Because the evidence falls far short of showing that any satisfactory treatment and rehabilitation has occurred, the decision of the trial court is reversed.