Paula DOVER, Appellant,

v.

Eldon DOVER, Respondent.

No. WD 51034.

Missouri Court of Appeals,
Western District.

Oct. 8, 1996.

Edward Berg, Columbia, for appellant.

F. Randall Waltz, III, Waltz & Jordan, Jefferson City, for respondent.

Before EDWIN H. SMITH, P.J., and BRECKENRIDGE and ELLIS, JJ.

BRECKENRIDGE, Judge.

Paula Dover (Mother) appeals from the trial court's order modifying the decree that dissolved her marriage to Eldon Dover (Father). Mother contends that the trial court erred by failing to grant her summer visitation with the parties' children, and by failing to modify the transportation arrangements for visitation contained in the original decree. The trial court's order concerning visitation is affirmed in part, and reversed in part and remanded.

During Mother and Father's marriage, they had two children: Eric Ryan Dover, born on October 24, 1982, and Aaron Ray Dover, born on October 24, 1984. In September of 1987, the parties obtained a dissolution decree which dealt with all issues other than child custody, visitation and support. In March 1989, the court awarded custody of both Aaron and Eric to Father subject to Mother's rights of reasonable visitation. This decree set out Mother's visitation rights with the children in detail.

Specifically, the trial court awarded Mother visitation with the boys on alternate weekends, on alternating holidays, during half of the Christmas holiday, and for fourteen consecutive days in each of the months of June, July, and August. Father had custody on the other fourteen days of the summer months. The decree also specified that each parent was responsible for half of the transportation for visitation. Mother was to pick up the boys at the beginning of her visitation, and Father was to transport the boys home at the end of visitation.

In October of 1991, Mother filed a motion to modify the dissolution decree. She argued that the dissolution decree was now unreasonable because Father had moved from Jefferson City to Scott City, 270 miles away. This move resulted in increased transportation time and cost from her home in Columbia due to the additional 270 miles. Therefore, Mother argued, the increased cost, distance, and time involved in visitation rendered her rights meaningless.

Specifically, she alleged that the alternative weekend visitation was not workable. She requested weekend visitation when the boys were off from school on Mondays or Fridays, visitation during the spring, Thanksgiving and Christmas recesses, and ten consecutive weeks of visitation in the summer. In addition, Mother requested that Father be made responsible for transportation to and from Mother's home.

Father answered with a cross-motion requesting the trial court to restrict Mother's visitation. The cross-motion included several allegations concerning Mother's use of controlled substances, her cohabitation with a male friend while the children were visiting, and her frequent patronage of bars. In her response, Mother denied these allegations and requested that custody of the boys be transferred to her.

The court appointed as guardian ad litem, Christina Neff, who had served as guardian ad litem in the original custody proceeding. After three days of testimony and evidence on the motions for modification, Ms. Neff recommended: (1) Father's retention of legal custody; (2) no award of joint legal custody due to the parents' inability to get along; (3) ten weeks of visitation with Mother during the summer; (4) one three-day weekend a month of visitation with Mother, preferably to coincide with school holidays; (5) visitation rights for Father during Mother's summer visitation; (6) no child support for Father; and (7) transportation provided by Father unless visitation occurs in the Cape Girar-

deau area and when Mother picks up and redelivers the boys for summer visitation.

The trial court entered an order and judgment of modification on December 28, 1994. The court found that Father's move to Scott City was a substantial and continuing change that required a modification of the prior decree. The modification order maintained Father's status as the sole legal custodian, granted mother visitation rights on one weekend or holiday per month, and left the prior provisions for transportation in effect. Mother could also have visitation on an additional weekend every two months, so long as the visitation occurred in the Scott City area. The order did not mention summer visitation. Mother filed a timely appeal from this order.

Mother's first point on appeal claims that the trial court erred by failing to provide for summer visitation in the modification order. She argues that the failure to address summer visitation created ambiguity because it left the order open to three possible interpretations. First, it could mean that the prior summer visitation provisions remained valid and unchanged. Second, it could mean that Mother was not to receive any summer visitation at all. Third it could indicate that the court mistakenly left out a modification of summer visitation. This last possibility is supported by the fact that the order's paragraph 2, which addresses weekend visitation, is followed by a paragraph 6, which requires the parents to provide each other with a current address and phone number. The order contains no paragraphs with the numbers 3, 4, or 5. In the alternative, Mother claims that the trial court's order was against the weight of the evidence or misapplied the law.

■■■ The standard of review for this case is found in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court will affirm the trial court's order of modification unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* In matters concerning visitation rights, this court gives great defer-

ence to the trial court's decision. *In re Snoke*, 913 S.W.2d 407, 409 (Mo.App.1996).

■■■ The trial court may modify visitation rights if such a modification would serve the best interests of the children. § 452.400.2, RSMo 1994.[1] The standard for modifying visitation is the same "best interests" standard which applies to a trial court's modification of a custody decree under § 452.410.1. *Pulliam v. Sutton*, 728 S.W.2d 252, 253 (Mo.App.1987). Under that statute, the trial court will not modify a prior dissolution decree unless "it finds, upon the basis of facts that have arisen since the prior decree ..., that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." Section 452.410.1. A change of circumstances may occur within the meaning of § 452.410.1 when a custodial parent moves a considerable distance from the noncustodial parent's residence. *Rice v. Shepard*, 877 S.W.2d 229, 231 (Mo.App.1994); *Adams v. Adams*, 812 S.W.2d 951, 956 (Mo.App.1991).

■■■ Here, there was sufficient evidence to support the trial court's finding that a change in the circumstances of the parties had occurred and that a modification of visitation would serve the best interests of the children. Father had moved to Scott City, which was 204 miles further from Mother's residence in Columbia than his previous home in Jefferson City. As a result, traveling time between Father's residence in Scott City and Mother's home in Columbia increased to nearly five hours each way. Such a distance impedes Mother's visitation rights and "undoubtedly diminish[es] the quality of any time spent together and may well engender deep resentment on the part of the child, the parent or both." *McElroy v. McElroy*, 910 S.W.2d 798, 805 (Mo.App.1995) (quoting *Riley v. Riley*, 904 S.W.2d 272, 279 (Mo.App. 1995)). *See also Hord v. Morgan*, 769 S.W.2d 443, 449 (Mo.App.1989). In addition, the parties agreed that Father's move created the need for a modification.

■■■ Since these facts demonstrate a sufficient change of circumstances to permit mod-

**1.** All statutory references are to the Revised Missouri Statutes 1994.

ification of the dissolution decree, this court must determine whether the terms of the modified order are erroneous. Mother first argues that the order of modification is ambiguous because in its original order the trial court provided for summer visitation, and its failure to mention summer visitation in the modification creates an ambiguity. A modification order is a new judgment based on new evidence, however, and it replaces the original decree of dissolution with respect to the provisions modified. *See Spangler v. Spangler,* 831 S.W.2d 256, 261 (Mo.App.1992). In this case, the trial court created a new visitation schedule, thereby replacing the original provisions. Since a modification is a new judgment, this court does not interpret it with reference to the original dissolution decree, unless it expressly refers to or incorporates the provisions of the prior decree.

■ The modification order is very specific concerning Mother's visitation rights. In this order, the trial court granted Mother one period of "weekend" visitation in eight of the nine months of the school year and provided for an additional weekend of visitation every two months. Many of the specifically designated "weekends" are extended due to holidays. The order did not grant Mother any summer visitation. The order of modification reads:

1. Respondent continue to be the sole legal custodian:

2. Petitioner have weekend visitation, subject to change by the parties by agreement only, as follows:

   a. One weekend per month in each month, as follows: February, Presidents' Day weekend: March, third weekend of the month: April, Easter weekend: May, Mother's Day weekend: September, Labor Day weekend: October, third weekend: November, Thanksgiving Day vacation, in alternating years to include Thanksgiving Day, in other years not to so include: and December, December 26 through the day before school begins in alternate years, from December 24 in other years: should weather or the children's activity schedule prevent a visitation, weekend or otherwise, petitioner shall have a makeup visitation at such time as she may select.

   b. Petitioner shall have one additional weekend visitation period with the children every two months, at her option, provided she will travel to the area of respondent's residence and stay in that area for the visitation period;

   c. Present provisions for transportation shall continue in effect;

   d. In the event that the school holidays do not coincide with the holiday weekends set forth in subparagraph 2.a. above, or if the school has a three-day holiday weekend, then that weekend can be substituted upon thirty days notice to petitioner.

6. Each party shall provide the other with his or her current home address and telephone number....

Because this court interprets the modification order on its face, the only evidence supporting Mother's position is the numbering of the paragraphs. Obviously, the fact that paragraph number six follows paragraph number two is the result of some error by the trial court. But whether this error makes the order ambiguous is another question.

■ The general rules of construction for written instruments are used to construe court judgments. *Hampton v. Hampton,* 536 S.W.2d 324, 325 (Mo.App.1976). If possible, judgments should be construed in a way that will make them effective. *Id.* But, when the language of the judgment is "plain and unambiguous there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." *Id.* (quoting 49 C.J.S. Judgments § 436 (1947)).

■ On its face, the order is not ambiguous. It is plain and unambiguous in setting out Mother's visitation schedule, and it leaves no room for doubt as to its interpretation. The order is very specific about the times when Mother is to have visitation. Misnumbered paragraphs alone do not create sufficient ambiguity to constitute reversible error because they do not leave the order open to more than one interpretation.

Since the order is not ambiguous, this court must next address Mother's claim that the trial court's order denying Mother visitation during the summer is against the weight of the evidence or misapplies the law. The primary factor to be considered in an award of visitation is the best interests of the children. *Snoke,* 913 S.W.2d at 408–09. Missouri's public policy favors "frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage...." § 452.375.3.[2] In arranging custody, courts must determine the most likely course to assure this contact between the children and each parent. "Missouri courts presume that a child's frequent and meaningful communication with both parents is in the child's best interest." *Hadfield v. Cannell,* 907 S.W.2d 283, 285 (Mo.App.1995).

Here, there was substantial evidence that neither Mother nor Father was without fault in attitude or conduct. There was evidence that both parents had engaged in inappropriate behavior with respect to their children, but much of the bad conduct occurred years before the hearing. At times, Mother put her own desires ahead of her children's needs. For his part, Father frequently interfered with Mother's visitation rights and attempted to turn the boys against Mother. However, despite this evidence, the trial court left custody with Father and granted Mother as much visitation as possible during the school year, when the five hour trip was most likely to interfere with meaningful visitation. *See McElroy,* 910 S.W.2d at 805.

Father argues that the evidence of Mother's bad conduct was the basis of the trial court's failure to award Mother summer visitation. But, the trial court never found that Mother was unsuitable for summer visitation. Indeed, such a finding would be inconsistent with its grant of school year visitation to her, which was as liberal as the parties' circumstances would allow.

Substantial summer visitation with a non-custodial parent who lives at a distance is particularly important because it represents the best opportunity for the children to have meaningful contact with that parent. *See*

*Roundtree v. Belk,* 879 S.W.2d 773, 775 (Mo. App.1994); *Stanton v. Abbey,* 874 S.W.2d 493, 496 (Mo.App.1994); *In re Marriage of Turner,* 764 S.W.2d 160, 163 (Mo.App.1989). In this case, both the guardian ad litem and Father recommended that Mother have some summer visitation. The guardian ad litem recommended ten weeks; Father recommended two. While the lack of *extended* summer visitation might be supported by the evidence that the children desired to be involved in activities in Scott City, there is no evidence, when considered in the light most favorable to the judgment, which would support the total denial of summer visitation to Mother.

Therefore, the trial court's order denying Mother summer visitation is against the weight of the evidence. The judgment of visitation is reversed with regard to its denial of summer visitation, and the cause is remanded to the trial court to let that court determine the details of such visitation. *Roundtree,* 879 S.W.2d at 775. All other provisions of the trial court's visitation schedule are affirmed.

As her second point on appeal, Mother claims that the trial court erred in failing to modify the transportation arrangements of the divorce decree. Under that decree, Mother and Father shared transportation costs equally since Mother was to pick the boys up at the beginning of visitation and Father to drive them home at the end. In the order and judgment of modification, the circuit court found that Mother did not have the means to pay child support, and that "it would be better, in the best interests of the children, that her limited resources be applied to her transportation obligations in connection with visitation."

Mother asserts that under the child support guidelines, Mother owes Father no child support because she only receives $446 per month in social security benefits and $196 per month in food stamps. Both her social security and food stamp benefits are excluded in Form 14. Nevertheless, the trial court may have imputed some income to Mother or

---

**2.** Senate Bill 174 passed by the Missouri legislature in 1995 amended § 452.375. Although subsection 3 was renumbered to become subsection 4 the text of the subsection was not affected.

relied upon other factors to support a split of the transportation costs. *See Hansen v. Phenicie,* 917 S.W.2d 618, 619 (Mo.App.1996). One such factor is that Mother claims Father does not fully cooperate with her scheduled visitation. The trial court may have believed it would avoid controversy to have Mother pick up the children at the beginning of each visitation.

Under the facts of this case, we cannot say that it was an abuse of the court's discretion to compel Mother to provide half of the transportation for visitation. The remand to establish a schedule of visitation will increase the number of occasions requiring transportation, however, and the trial court should have the ability to consider this fact in determining who should bear the transportation costs. Therefore, the order that each party should provide one-half of the transportation for visitation is also remanded.

The trial court's order is reversed with regard to its lack of summer visitation. The cause is remanded for the entry of a schedule of summer visitation and reconsideration of the order for transportation. All other terms of the order of modification are affirmed.

All concur.