Marshall D. SANDERS, Petitioner–Respondent,

v.

Jonna R. SMITH and E.R.S., Respondents–Appellants.

No. 24503.

Missouri Court of Appeals, Southern District, Division One.

Sept. 23, 2002.

Jason W. Johnson, Springfield, for Appellant.

Stephen P. Carlton, Carlton & Payne, P.C., Carthage, for Respondent.

PHILLIP R. GARRISON, Judge.

Jonna R. Smith ("Mother") appeals the trial court's judgment entered on September 14, 2001 denying her motion to modify an earlier judgment entered on April 22, 1999 upon a stipulation by the parties ("stipulated judgment") in a paternity action initiated by Marshall D. Sanders ("Father").[1] In its judgment, the trial court issued a temporary order granting Father "phase-in" visits with the child that is the subject of this action ("E.R.S.") over a three-week period beginning August 25, 2001, and a permanent order that subsequent visitation occur pursuant to the stipulated judgment. The stipulated judgment had found the existence of a parent-child relationship between Father and E.R.S., granted physical custody of E.R.S., then five years old, to Mother, and granted visitation, including overnight visits, to Father.

On this appeal, Mother contends that the trial court's refusal to modify the stipulated judgment by suspending overnight visitation between Father and E.R.S. was against the weight of the evidence, and

was not supported by substantial evidence. We affirm.

The standard of review in court-tried cases such as this case is well-established in Missouri; the judgment of a trial court will be affirmed unless "there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); Rule 84.13(d).[2] In cases addressing visitation rights, we give "great deference" to the trial court's decision. *In re Snoke v. Bordenaro,* 913 S.W.2d 407, 409 (Mo.App. W.D.1996). We view the evidence received in the light most favorable to the trial court's ruling and disregard all contrary evidence or inferences therefrom. *In re Marriage of Perkel,* 963 S.W.2d 445, 447 (Mo.App. S.D.1998). This is so because the trial court "is in the better position to judge the credibility of the witnesses, as well as their sincerity, character, and other intangibles not completely revealed by the record." *Snoke* at 409. "This deference is critical in domestic cases, where testimony is often sharply divergent and lawyers are prone to reargue the facts on appeal." *Id.*

E.R.S. was born on May 8, 1994. Mother and Father have never been married to each other. While the record does not indicate a specific date, Father initiated an action in Jasper County Circuit Court seeking to establish paternity and obtain visitation rights with E.R.S. A hearing was held concerning Father's petition on April 22, 1999. At the conclusion of that hearing, the trial court entered the stipulated judgment, finding that a parent-child rela-

---

1. For reasons not explained in the record, the stipulated judgment of April 22, 1999 was not stamped filed until May 1, 2000. As a result, the judgment appealed from here references the stipulated judgment by this later date.

2. All references to rules are to Missouri Rules of Civil Procedure (2002).

tionship existed between Father and E.R.S. The trial court further found that Father owed support for E.R.S., that the presumed child support amount as calculated pursuant to Section 452.340(8),[3] Rule 88.01, and Civil Procedure Form 14 was unjust or inappropriate, and that the correct amount of child support was $225 per month. The trial court held that custody should be awarded to Mother, and that Father should be granted visitation rights, beginning with a phase-in period ending the weekend of October 2, 1999, followed by a visitation arrangement that included regular overnight visits.

On July 19, 2000, Mother filed a motion to modify the stipulated judgment, contending that Father had failed to exercise his right of visitation on a regular basis, thereby failing to bond effectively with E.R.S. Additionally, Mother argued that E.R.S. had exhibited signs of mental distress as a result of court-ordered overnight visitation with Father and was receiving psychological counseling as a result. Mother contended this constituted a substantial and continuing change such that the stipulated judgment should be modified to discontinue overnight visitation to allow E.R.S. sufficient time to bond with Father, pursuant to a professional counselor's advice.

On March 9, 2001 and again on August 17, 2001, a hearing was held concerning Mother's motion to modify the stipulated judgment. In support of her motion, Mother offered testimony from a licensed professional counselor, Tracy Clements Pierce ("Clements"), who had observed supervised visits between Father and E.R.S. Clements testified that enforcing court ordered overnight visitation would create a danger that E.R.S. would develop an "attachment disorder," preventing him from bonding effectively with his parents or others into adulthood. Under cross-examination, however, Clements conceded that she also had observed substantial positive interaction between Father and E.R.S., that a progression toward a more comfortable relationship between Father and E.R.S. occurred prior to Father's discontinuing supervised visitation, and that she had no reason to suspect any abusive or inappropriate behavior patterns in Father's interaction with E.R.S.

Mother also testified that E.R.S. distrusted Father and was extremely reluctant to participate in overnight visitation. She also testified that Father was inconsistent in his exercise of visitation rights and in his inquiries into E.R.S.'s activities, that he had refused to voluntarily suspend all overnight visitation with E.R.S. until Clements deemed E.R.S. ready for such visitation, and that Father had thereby sabotaged the effective implementation of the stipulated judgment's visitation provisions.

In opposition to Mother's motion, Father testified that his sporadic participation in supervised visitation stemmed from his work schedule and from Clements' unwillingness to accept weekend appointments for supervised visitation with E.R.S. He testified further that E.R.S.'s resistance to overnight visitation was grossly exaggerated by Mother and by Clements in their testimony and that, after an initial warming up period, E.R.S. regularly enjoyed the overnight visitation that had occurred. Notwithstanding Father's disagreement with the assessment of Clements and Mother regarding overnight visitation, Father testified he willingly agreed not to take E.R.S. for overnight visits for a period of approximately one year. Additionally, Father testified that on numerous occasions Mother disregarded the trial court's

---

**3.** All references to statutes are to RSMo 2000, unless otherwise indicated.

visitation order, refusing to allow scheduled contact between Father and E.R.S.

On September 14, 2001, the trial court entered its judgment that, following a three-week "phase-in" period consisting of daytime visitation between Father and E.R.S. in the presence of E.R.S.'s stepfather, visitation was to commence pursuant to the stipulated judgment, including overnight visitation. This appeal followed.

In her sole point on appeal, Mother contends that the evidence adduced at the hearing on her motion to modify the stipulated judgment clearly established that it was not in E.R.S.'s best interest to be compelled to submit to overnight visitation with Father, and that the trial court erred in ordering such overnight visitation in the face of Clements' testimony that it would be contrary to E.R.S.'s best interests. Mother further argues that insufficient evidence was presented supporting the trial court's denial of her motion. We disagree.

 Mother's argument that the trial court's ruling was against the weight of the evidence is unavailing. Referencing the testimony of Clements regarding the possibility of E.R.S. developing an "attachment disorder" if forced on overnight visits with Father, Mother argues that "[c]ommon sense mandates that it is contrary [sic] to the best interests of [E.R.S.]" to force him to submit to overnight visits in the face of "documented medical and therapeutic evidence" suggesting the possibility of resulting emotional trauma. The implicit standard of review assumed in this argument—the mandate of common sense—is a misstatement of the law. In considering the evidence, a trial court is free to disbelieve any part or all of the testimony given by an expert witness, whether or not other evidence refutes that testimony. *J.L.P.(H.) v. D.J.P.*, 643 S.W.2d 865, 868 (Mo.App. W.D.1982). Moreover, "[e]vidence in the record which

might have supported a different conclusion does not demonstrate the court's holding is contrary to the weight of the evidence." *Nichols v. Ralston*, 825 S.W.2d 347, 348 (Mo.App. S.D.1992) (citing *Alice v. Ronald*, 683 S.W.2d 307, 309 (Mo.App. S.D. 1984)). The record reveals both the trial court's respect for the qualifications and opinions of witness Clements, and its reasoned refusal to adopt as its own what it felt to be her conjectural and overly-solicitous concerns. This the trial court is clearly free to do. "This court will defer questions of credibility of a witness and choosing between conflicting evidence to the trial court[.]" *In Interest of Hill*, 937 S.W.2d 384, 388 (Mo.App. W.D.1997) (quoting *In Interest of B.A.F.*, 783 S.W.2d 932, 933 (Mo.App. W.D.1990)). "Even if we would have decided this issue differently at the trial court level, on review, we must defer to the trial court where there is sufficient evidence to support its decision." *Zalmanoff v. Zalmanoff*, 862 S.W.2d 941, 945 (Mo.App. E.D.1993) (citing *Wynn v. Wynn*, 738 S.W.2d 915, 918 (Mo.App. E.D. 1987)).

██ Similarly, we find wanting Mother's argument that there was insufficient evidence to support the trial court's judgment. In reviewing the sufficiency of the evidence supporting a trial judge's ruling, this court accepts as true any evidence, or inferences therefrom, which was presented and which supports the trial court's decision, and we disregard any contrary evidence or inferences. *P.L.W. v. T.R.W.*, 890 S.W.2d 688, 690 (Mo.App. S.D.1994); *In re Marriage of Johnson*, 865 S.W.2d 412, 414 (Mo.App. S.D.1993). The record in the instant case belies Mother's contention that the evidence "would seem to mandate nothing but" a finding that modification of the stipulated judgment was necessary. Both Clements and Mother conceded in their testimony that, prior to

Father discontinuing supervised visits in Clements' office, the relationship between Father and E.R.S. was growing in a positive direction. Father testified that, after initial resistance to leaving for visits with Father, which was observed by Mother, E.R.S. overcame his resistance and enjoyed the balance of his time with Father, time that was not observed either by Mother or by Clements. No evidence was presented that indicated any inappropriate change in Father's parenting practices or behavior that would suggest the need for a modification of the stipulated judgment. The trial court was entitled to deduce that the concerns of Clements and Mother, while well-intended and informed, were overstated and fell short of establishing the need to modify the stipulated judgment. As a result, we are unable to find reversible error in the trial court's judgment.

The judgment of the trial court is affirmed.

MONTGOMERY P.J., and BARNEY, J., concur.