**Hannah SEARCY, Respondent,**

**v.**

**Ricki Lee SEARCY, Appellant,**

**John and Linda Seedorff, Appellants,**

**James Kennedy, Defendant.**

**Nos. WD 58367, WD 58368.**

Missouri Court of Appeals, Western District.

Feb. 27, 2001.

Ricki Lee Searcy, pro se.

Edward Frederick Ford III, Kansas City, for appellants John and Linda Seedorff.

George Allen Pickett, Plattsburg, for respondent.

Christy Lea Fisher, Plattsburg, for defendant.

Before Presiding Judge SMART, Judge ELLIS and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Ricki Lee Searcy and John and Linda Seedorff appeal the trial court's judgment on remand removing restrictions on Hannah Searcy's visitation with her four children and changing limits on James Kennedy's visitation with two of Ms. Searcy's children, as to whom he is the natural father. The Seedorffs, who have court-ordered custody of all four children, argue that the court's order was unauthorized because the evidence on which the court based its order was more that two years old and did not support the termination of supervised visitation, and also because the statutory requirements for removing previously-imposed restrictions on Ms. Searcy's and Mr. Kennedy's visitation were not met in that neither parent showed proof of treatment and rehabilitation as required by Section 452.400.2, and in that the court's conclusion that the children had not been physically, emotionally or sexually abused was not supported by the evidence and was against the weight of the evidence.

We agree that remand is required on the basis that the court erred in removing restrictions on visitation based on evidence almost 30 months old at the time of its order modifying visitation. That order, now appealed from, followed a remand by the Supreme Court of a prior appeal in which the Supreme Court had held that the trial court erred in transferring custody of the children from the Seedorffs to Ms. Searcy and directed that on remand the court reinstate custody in the Seedorffs. The trial court went beyond the Supreme Court's mandate by not only restoring custody to the Seedorffs, but also by changing and removing the visitation provisions of its prior decree. It did so based solely on the evidence that had been adduced nearly 30 months earlier at the hearing on the motion to modify custody.

This was error. While a court may modify visitation in the best interests of the children, the court could not determine the best interests of the children based on this out-dated evidence. Further, in light of the fact that during the time this case was on appeal Mr. Kennedy and Ms. Searcy had married and were living in the same household, the court erred in permitting the children to visit Ms. Searcy overnight and for extended periods where, as here, she and Mr. Kennedy lived together, and she could not realistically provide adequate supervision 24 hours per day.

Mr. Searcy, father of two of the children, argues that the court below erred in not removing restrictions on his visitation also. We find no error in the fact the court did not remove limitations on his visitation, because to do so would be beyond the Supreme Court's mandate and would also be based on 30 month old evidence; therefore, we affirm this aspect of the court's decision. Our ruling is without prejudice to Mr. Searcy's right to file a motion to modify in support of which he can attempt to show that removal of the restrictions on his visitation is in the children's best interests for the reasons he raised on appeal to this Court.

I. FACTUAL AND PROCEDURAL BACKGROUND

On May 20, 1996, the Circuit Court of Ray County, Missouri, entered a Decree of Dissolution of Marriage for Respondent Hannah Searcy and Appellant Ricki Lee Searcy. Ms. Searcy had four children during her marriage to Mr. Searcy: Ariel Searcy, born July 22, 1990; Abegail Searcy, born October 21, 1991; Tiffany Kennedy and Brittany Kennedy, twins, born July 18, 1995. Mr. Searcy is the natural father of Ariel and Abigail, and, pursuant to a paternity test, the court determined Respondent James Kennedy to be the natural father of Tiffany and Brittany. Ms. Searcy is the natural mother of all four children.

In its original decree the trial court found that clear, cogent, and convincing evidence supported a finding that the best interests of the children would be served by granting custody of all four children to Appellants John and Linda Seedorff (the Seedorffs), who are the natural grandparents of Ariel and Abegail Searcy, but who are not related by blood to Tiffany and Brittany Kennedy.

The court found that each of the natural parents was unfit to have primary care, custody, or control of the children. Specifically, the court found that Mr. Kennedy was not fit and proper to have primary custody of his children, Tiffany and Brittany, and that his visitation with them should be restricted because Mr. Kennedy was on probation for the Class C Felony of Deviate Sexual Assault in the First Degree for engaging in deviate sexual activity with a female child under the age of 16. The restrictions on Mr. Kennedy's visitation with Tiffany and Brittany included:

> During the periods of the 4th weekend of each month wherein the Additional Respondent [Mr. Kennedy] has the right of visitation with Brittany and Tiffany Kennedy, [Mr. Kennedy] may visit with the *two (2) minor children only under the direct, constant, and strict supervision of his Father and/or Step–Mother.* **Further, that the minor children may *not* go for periods of visitation with [Mr. Kennedy] unless either his Father, Step–Mother, or both accompany him and supervise such visits at all times.** Said visitation shall be from 9:00 a.m. until 6:00 p.m. on the 4th Saturday and 4th Sunday of each month. **No overnight visitation shall be permitted.**

(italicized emphasis in original, other emphasis added).

The court further found that Ariel and Abegail's father, Ricki Searcy, was not fit and proper to have primary custody of the children and that his visitation should be restricted as follows:

> During the two (2) days of [Mr. Searcy's] visitation each month from 9:00 a.m. until 6:00 p.m. on each of such days, [Mr. Searcy] may visit with the minor children, Ariel and Abegail Searcy inside the physical premises of the home of [the Seedorffs] and that **such visits shall *only* be permitted under the constant and strict supervision and physical presence of *both* [of the Seedorffs] at all times and that in the event either or both of [the Seedorffs] are** unable to be physically present to supervise such visitation, then *no* such visitation shall occur.

(italicized emphasis in original, other emphasis added).

Although the court did not specify any of the reasons why it restricted the visitation of Mr. Searcy, the only reason for these restrictions that appears in the record was evidence that he took his two children from Mr. Kennedy's house and care on one occasion some years ago, in violation of a full order of protection Ms. Searcy had against him. Mr. Searcy claims he did so because he feared they were being abused by Mr. Kennedy, and when he got to the house he found them locked in a closet. However, he took them into his custody without permission and failed to return them for a period of three months to Ms. Searcy, as a result of which he was charged with violating the full order of protection for entering the dwelling of Mrs. Searcy and interfering with the custody of her two minor children, as set out in *Searcy v. State*, 981 S.W.2d 597, 598 (Mo.App.W.D.1998).

The court also placed restrictions on Ms. Searcy's visitation with the children, as follows:

> During periods of time when Petitioner, Hannah Searcy has physical possession and/or temporary custody of any or all four (4) of the minor children, the following limitations, restrictions, and conditions *shall always be observed:*
> 1. The purpose of these visitations are to establish a bond between [Ms. Sear-

cy] and whichever of all four (4) of the minor children are with [Ms. Searcy] and therefore, all other contacts with any and all third-parties *should be limited* so as to foster, encourage, and promote quality time between Ms. Searcy and the minor children; *and*

2. There shall be *no* male overnight house guests *at any time* that *any one (1) or more* of the minor children are in the physical custody of [Ms. Searcy]; *and*

3. Neither James M. Kennedy, nor Ricki Lee Searcy may be physically present *at any time* when [Ms. Searcy] has physical custody *or* possession of any one (1) or more of the minor children; *and*

4. Because the purpose of such visitations are to attempt to foster the Mother Child relationship and otherwise attempt to reunify the family unit, [Ms. Searcy] shall not permit *any male, not directly* related to her by blood or marriage, to be physically present *at any time in her home* with the minor child or minor children; *and*

5. That [Ms. Searcy] shall *not* cohabit *with any person of the opposite sex, at any time* that she has physical possession and/or temporary custody of the minor child or children; including, but not limited to the sharing of a motel or hotel room or similar accommodations; the staying at the home, apartment, residence, or similar permanent or temporary residence of such person; and any and/or all such related activities.

(emphasis in original).

In addition to the restrictions the court placed on visitation, the court ordered Ms. Searcy, the Seedorffs and Mr. Kennedy to seek counseling. Specifically, the court ordered that:

[Ms. Searcy, the Seedorffs, and Mr. Kennedy] *shall,* within forty-five (45) days of this Order enter into family and personal counseling, at the respective, separate cost of each party, and that pursuant to the Stipulation of the par-ties; [Ms. Searcy, the Seedorffs], and the minor children use the services of Karla Woodring and that [Mr. Kennedy] use the services of a similarly qualified professional and further, that such Counselors be and are hereby Ordered and Authorized to reveal *all* information to each other regarding any of the parties and/or minor children to such other counselor and to the Guardian Ad litem, Stanley M. Thompson, of the minor children.

(emphasis in original). The court did not order counseling for Mr. Searcy.

The court's order does not specifically state any of the reasons why it ordered Mr. Kennedy or Ms. Searcy to attend counseling, other than the sexual abuse conviction of Mr. Kennedy. The record reflects that at some point prior to the dissolution, however, the two oldest girls, Ariel and Abegail Searcy, alleged that their mother, Mr. Kennedy, and some members of Ms. Searcy's family other than their father, Ricki, had sexually abused them.

On September 25, 1996, four months after the trial court entered its judgment, Ms. Searcy filed a Motion to Modify Decree of Dissolution of Marriage regarding custody of all four children, alleging that a substantial and continuing change in circumstances had occurred justifying modification of custody pursuant to Section 452.410, which states in pertinent part:

[T]he court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a *change* has occurred in the circumstances of the *child* or his *custodian* and that the modification is necessary to serve the best interests of the child.

Sec. 452.410 (emphasis added). In her motion, Ms. Searcy asserted that since the dissolution decree was entered four

months earlier, she had become gainfully employed and was now capable of providing a stable and secure home for the four children. She also contended that in the months following the dissolution decree, the Seedorffs had persistently withheld visitation from her without justification, and that the best interests of the children required that they be returned to her custody. *See Searcy v. Seedorff,* 8 S.W.3d 113, 115 (Mo. banc 1999).

At a three-day hearing that began on August 27, 1997, Ms. Searcy testified that she was employed full-time as an assistant manager at Galyan's and that she was paid $8.00 per hour. She contended that she lived alone—meaning that Mr. Kennedy did not live with her—and that she had a stable home environment that would be good for her children. She admitted that she had not regularly attended court-ordered counseling with the counselor the court designated, Ms. Woodring, but said that she had attended counseling "seven or eight times" with another counselor of her own choosing, Dr. Laughlin.

Karla Woodring, the court-ordered counselor, holds a post-graduate degree in counseling and guidance. She testified at the hearing concerning Ms. Searcy's fitness as a mother. She stated that she had counseled with Ms. Searcy's children, Ariel and Abegail, for approximately 18 months, but that Ms. Searcy had not consistently received any counseling services from her. Ms. Woodring stated that during therapy, the girls confided in her that they had been sexually abused. She noted that the girls had told her that Mr. Kennedy and Ms. Searcy's two brothers and her parents also abused them. She stated that one of the girls also told her that Ms. Searcy had "touched her pee-pee."

Ms. Woodring testified that the girls' stories of abuse were consistent for the 18 months they were in therapy and that their behavior was consistent with the behavior of sexually abused children. For example, she testified that one of the girls drew a picture of a snowman with a penis on it. Ms. Woodring also spoke of a time when the girls acted in a sexual manner and one of the girls got on top of the other in a "sexual position." She also stated that at another point, one of the girls "also stuck her tongue out to kiss Grandma Seedorff," and that the child said that is how Ms. Searcy's brothers kissed her.

Ms. Woodring stated that despite the girls' behavior and their assertions that they had been abused, Ms. Searcy was not open to Ms. Woodring's recommendations that the children stay away from the people who allegedly abused them. She stated that for that reason, the best interests of the children would preclude a relationship with their mother; the children should not have any contact with Mr. Kennedy; and a relationship with Mr. Searcy may also be detrimental based on the fact that he previously had taken the children without permission.

Ms. Searcy did not like Ms. Woodring or find her to be helpful, so she found another counselor, Dr. Sandra Laughlin, Ph.D. Dr. Laughlin testified at trial that she had done a "fair amount of work with children and families" and that she had been practicing for approximately 19 years, but that she had never testified in a case involving sexual abuse. She testified that she had reviewed some of the records of Ms. Woodring, but that she had never spoken with her. All she had done was meet with Ms. Searcy and her daughters.

Dr. Laughlin testified that she believed the children were comfortable with Ms. Searcy, and for that reason she did not see a reason why Ms. Searcy should not have custody of the girls. With respect to Mr. Searcy, Dr. Laughlin noted that the girls said they were comfortable with Mr. Searcy. In regard to Mr. Kennedy, she stated she could not form an opinion about the girls' relationship with him, although Ariel and Abegail told the doctor that Mr. Kennedy was "mean" and that he put "medicine" in their food.

On cross-examination by the children's Guardian Ad Litem, Stanley Thompson, Dr. Laughlin testified that she did not make as thorough of an examination of the girls as she would have liked. She stated that her opinion was based on the fact that she had only met with Ariel and Abegail a total of four hours and with the smaller girls, Tiffany and Brittany, two of those four hours. She stated that she had only met with Ms. Searcy a total of 6 times, and that she had never met with Mr. Kennedy, Mr. Searcy or the Seedorffs (who had custody of the children), nor had she ever talked with or reviewed the records of the Guardian Ad Litem, and had never talked with Ms. Woodring, the court-ordered counselor of Ms. Searcy and the children. Dr. Laughlin also stated that she understood from Ms. Searcy that her only responsibility was to perform "an evaluation of the parent-child interaction," not counseling or providing an evaluation of Ms. Searcy, and she affirmatively stated that she had not counseled or evaluated Ms. Searcy.

The court-appointed Guardian Ad Litem, Stanley Thompson, also testified at the hearing. He told the court that he believed that the girls had been sexually abused. He said that Ariel and Abegail told him on numerous occasions that they were sexually abused, and he stated that their stories were consistent over the entire time he has acted as their Guardian Ad Litem. He stated that he knew through his experience interviewing children as a Prosecutor in the Juvenile Court that the girls' stories in this case did not appear to be coached, in that the stories related to specific activities, which, he believed, children that age would normally not know. He also stated at the hearing that, while Brittany and Tiffany were too young to talk with him directly, he believed that they had been abused. He said that they "have had inappropriate bruising, inappropriate injuries ... They have also had irritated vaginal areas. The source of which, it's reported after returning from visits from [Ms.] Searcy."

The Guardian Ad Litem stated that, contrary to Ms. Searcy's claim that she lived alone with the children, he believed Ms. Searcy and Mr. Kennedy were dating each other at the time of the hearing. He believed they were playing "hide and seek" with the court's order, which prohibited any male from being in the house while the children were present and forbade Mr. Kennedy from being with the children unless his father or stepmother was present. He also believed that all the parties violated the court order and restrictions placed on them, such as on the occasions when the Seedorffs allowed the girls to see Mr. Searcy, and Ms. Searcy allowed them to see Mr. Kennedy. Mr. Thompson also stated, "Those four children are very, very special, and they deserve an opportunity to be stress free and not molested." He recommended that the court place all four children into foster care, which would provide the children a neutral environment apart from all of the parents and family members involved.

Mr. Kennedy testified that he did not abuse the girls. He also offered the testimony of a counselor from a sex offender program that he had attended, who stated that he did not believe Mr. Kennedy was a danger to children, but that he was unaware that any allegations of sexual abuse had been made against Mr. Kennedy. A licensed clinical social worker also testified on Mr. Kennedy's behalf and stated that he had counseled with Mr. Kennedy for approximately a year, that he did not believe Mr. Kennedy was a threat to the girls, but that he and Mr. Kennedy had not at length discussed the allegations of sexual abuse that had been made against him.

Mr. Searcy testified that he desired to have unsupervised visitation with Ariel and Abegail, that he had never abused them, that he understood he had previously violated the law when he had taken them in violation of the full order of protection, and that now he planned to uphold the law and the court's order concerning his daughters.

After hearing all of the evidence, the trial court entered a judgment finding that a substantial change in circumstances had occurred that warranted the transfer of custody from the Seedorffs to Ms. Searcy. The court held that Ms. Searcy was a fit and proper person to have custody and control of the children, and the court ordered that custody of the four minor children be placed with Ms. Searcy. It held that:

> ... [T]he allegations and evidence submitted relating to physical, emotional, and sexual abuse of the minor children, Ariel and Abegail Searcy, by: Hannah Searcy, James Kennedy, and members of the family of Hannah Searcy is insufficient to establish such facts and ... the evidence presented lacks sufficient credibility, and indicia of credibility on said issues.

The Seedorffs and Mr. Searcy appealed the trial court's judgment. On appeal, the Supreme Court found that the trial court erred in modifying child custody and transferring custody to Ms. Searcy under Section 452.410.1, which provides that the moving party seeking to modify a custody order must first establish that a substantial change in circumstances of the *child* or the *child's custodian* has occurred. *Searcy*, 8 S.W.3d at 116. The trial court modified the custody order based on the changed circumstances of a non-custodial parent, Ms. Searcy, and the record did not demonstrate a substantial change in circumstances of the children or of their custodians, the Seedorffs. *Id.* at 118. The Supreme Court therefore, reversed the trial court's order changing custody of the children to Ms. Searcy and remanded the cause to the trial court. *Id.*

On February 10, 2000, following remand from the Supreme Court, and nearly two years after the trial court had entered its initial change-of-custody order, the court entered a new judgment in this matter. In its order, in accordance with the Supreme Court's mandate, the court removed the children from Ms. Searcy's custody and returned the children to the Seedorffs' custody. The court also, however, without an additional hearing and apparently based solely on the evidence adduced at a hearing over two-and-one-half years earlier, removed all restrictions on visitation that it had previously placed on Ms. Searcy and changed the restrictions on visitation it had placed on Mr. Kennedy, now allowing his visitation with the children to be supervised by Ms. Searcy. The court did not remove the visitation restrictions placed on Mr. Searcy. Mr. Searcy and the Seedorffs now appeal the trial court's judgment on remand.

## II. STANDARD OF REVIEW

The judgment of the trial court modifying visitation will be affirmed on appeal "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Dover v. Dover*, 930 S.W.2d 491, 494 (Mo.App. W.D.1996). While we give "great deference to the trial court's assessment of what serves the best interests of the child, because it is in the better position to judge the credibility of the witnesses, as well as their sincerity, character, and other intangibles not completely revealed by the record," *In re Snoke*, 913 S.W.2d 407, 409 (Mo.App. W.D.1996); *Sinopole v. Sinopole*, 871 S.W.2d 46, 48 (Mo.App. E.D.1993), as in any case concerning the modification of visitation rights, the "paramount concern of [this] court is whether the order serves the best interests of the child[ren]." *Snoke*, 913 S.W.2d at 408–09. *See Ansevics v. Cashaw*, 881 S.W.2d 247, 252 (Mo. App. W.D.1994).

## III. THE TRIAL COURT ERRED ON REMAND IN VARYING FROM THE SUPREME COURT'S MANDATE AND CHANGING VISITATION BASED ON 30 MONTH OLD EVIDENCE

The only issue tried by the trial court in August 1997 was whether primary custody

of the four children should be changed from the Seedorffs to Ms. Searcy. On appeal, the Supreme Court found that the trial court should not have found a substantial change in circumstances had occurred and reversed the trial court's order changing custody of the children to Ms. Searcy, stating:

> Because Ms. Searcy failed to show that the circumstances of the children or the custodians had substantially changed, she did not satisfy the threshold requirement to invoke the provisions of section 452.410.1. *Her motion to modify the judgment awarding custody to the Seedorffs, therefore, should have been denied....* The judgment is reversed, and the cause is remanded.

*Searcy,* 8 S.W.3d at 118 (emphasis added).

In light of the Supreme Court's mandate, the only matter before the trial court on remand was the motion to modify based on an alleged substantial change in circumstances, and the court's only duty was to deny that motion and reinstate custody in the Seedorffs. The trial court did not limit itself to simply denying the motion to modify and returning the children to the Seedorffs, however. Relying on evidence adduced at the hearing it had held 30 months earlier in August 1997, the court removed the restrictions it had previously placed on Ms. Searcy's visitation with the girls and modified the restrictions on Mr. Kennedy's visitation so that it could be supervised by Ms. Searcy.

■ In changing the prior decree's restrictions on Mr. Kennedy's visitation and in entirely removing the restrictions on Ms. Searcy's visitation, the court exceeded the Supreme Court's mandate. "It is well-settled that a trial court, on remand, with respect to the issues addressed by the appellate court on appeal, only has that authority granted to it by the appellate court in its mandate." *Sumnicht v. Sackman,* 968 S.W.2d 171, 174 (Mo.App. W.D. 1998) (*Sumnicht II*). This means that, where a court has given directions as to what should occur on remand from an appellate court, a trial court "has no power to modify, alter, amend or in any manner depart from the judgment of the appellate court and proceedings contrary to the appellate court mandate are null and void." *State ex rel. County of St. Charles v. City of St. Peters,* 876 S.W.2d 46, 47–48 (Mo. App. W.D.1994).[1]

*Sumnicht II* is instructive as to whether the trial court properly followed the Supreme Court's mandate in this case when it went beyond merely restoring custody of the children to the Seedorffs and actually materially changed the visitation allowed to Ms. Searcy and Mr. Kennedy. On the original appeal by Mr. Sumnicht, reported at *Sumnicht v. Sackman,* 906 S.W.2d 725 (Mo.App. W.D.1995) (*Sumnicht I*), as here, we found that the trial court had acted improperly in changing custody in the absence of evidence of a substantial change of circumstances of the child or the child's custodian. We therefore reversed and remanded for entry of an order reinstating the original custody arrangement giving sole custody to one parent. We also stated in our remand that the court could change joint legal custody on remand, if necessary, in order to address certain schooling issues.

On remand, the court did just as permitted and changed legal custody to provide for joint legal custody. Appellant argued that this was error, as it was equally erro-

---

1. Prior decisions of the appellate court "become the law of the case in any subsequent proceedings, and the trial court is without power to modify, alter, amend or otherwise depart from those decisions." *Student Loan Mktg. Ass'n v. Raja,* 914 S.W.2d 825, 829 (Mo.App. W.D.1996) (citations omitted). When a point decided at the appellate level comes before a lower court on further proceedings in the same case, "the lower court does not have the jurisdiction to overrule the appellate court. If the lower court disregards the law of the case, the issue is not simply whether that court is correct in its construction of the appellate decision, but rather whether the court is within its lawful jurisdiction." *Hankins v. Hankins,* 864 S.W.2d 351, 353 (Mo.App. W.D.1993) (citations omitted).

neous to change *legal* custody in the absence of a substantial change of circumstances as it had been to change physical custody of the children. We agreed, and held that to the extent that our opinion in *Sumnicht I* held to the contrary, it was in error. *Sumnicht II*, 968 S.W.2d at 178. It then fell to us to determine exactly what authority this meant the trial court did have on remand. We did so, stating:

> The sole purpose of our remand should have been to direct the trial court to reinstate the original custody arrangement of sole legal and physical custody to the appellant. . . .

*Id.* We then held that the effect of this ruling was "to reinstate the original award of joint legal and physical custody to the appellant. Of course, our opinion does not deprive the trial court of its continuing jurisdiction under Section 452.410 to entertain and proceed on any subsequently filed motion to modify custody based on change of circumstances." *Id. See also County of St. Charles,* 876 S.W.2d at 48 (where the post-mandate judgment goes beyond the opinion and mandate of the court "it alters and is in excess of the mandate and opinion. . . . Any subsequent orders or adjudications in the case must be confined to those necessary to execute on the judgment . . .").

Here, as in the above cases, the court took action beyond that ordered by the Supreme Court in its mandate. It did not limit itself to reinstating the original custody arrangements, but it changed visitation arrangements based on evidence adduced at a two-and-one-half-year-old hearing.[2] In so ruling, it erred.

A court "may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child." Sec. 452.400.2. *See Turley v. Turley,* 5 S.W.3d 162, 164 (Mo. banc 1999). Here, since the evidence the court had heard as to the situation of the parties was 30 months old, the court could not know based on the record before it that a change in visitation was in the best interests of the children, for it simply did not know what their current situation was. As a matter of logic and common sense, a court cannot accurately determine the best interests of the children based solely on evidence presented at a hearing that occurred more than two-and-one-half years prior to its order.

The case at bar provides a good example of the reasons why orders concerning custody or visitation should not be made based on stale evidence from long-concluded hearings. The court's order on remand retained the restrictions on Mr. Searcy's visitation, although so far as the record on appeal shows those restrictions were based on a single incident which occurred prior to the original decree, without any findings as to whether Mr. Searcy would still be a risk to the children if he were given unsupervised visitation. At the same time, the court ended entirely the restrictions on Ms. Searcy's visitation and modified the restrictions on Mr. Kennedy's visitation so as to remove restrictions on overnight visitation and so as to allow Ms. Searcy to be the person who supervised his visitation.

Even if this were a supportable order at the time of the August 1997 hearing, the parties have stipulated that in so many months since that hearing, Ms. Searcy and

2. Ms. Searcy filed her motion to modify custody on September 25, 1996. The hearing on the issue occurred on August 27 through August 29, 1997. The trial court entered its original judgment on April 28, 1998, transferring custody from the Seedorffs to Ms. Searcy. That order was itself entered some eight months after the original decree. The appeals process was lengthy, because appeal was taken to the Court of Appeals and then to the Supreme Court, so that the Supreme Court did not enter its judgment ordering the return of the children to the Seedorffs' custody until December 21, 1999, nearly two years after the trial court's judgment modifying custody, and over two-and-one-half years after the August 1997 hearing at which evidence relevant to custody had been taken, and the court's order on remand was not entered until February 2000, some 30 months after the August 1997 hearing on which it was based.

Mr. Kennedy have married and are now living together. As a result, Mr. Kennedy will be in the home while all the children are visiting Ms. Searcy. It is unrealistic to expect that she can monitor his visits with the children the entire time he is in the home, particularly while the children visit overnight. The court noted in *J.P. v. P.W.*, 772 S.W.2d 786 (Mo.App. S.D.1989), that "supervised overnight visitation and supervised visitation for such extended periods of ten days is impractical." *Id.* at 794. It would be even more impractical to try to supervise all visitation of a father who lives in the house on a continual basis with mother.

■ We understand that during the pendency of this appeal the parties have moved to modify custody and the issue of modification of custody has been the subject of a hearing, which is now under submission in the court below. That is the proper forum in which to determine whether visitation should be changed and whether, since the time of the initial appeal, a substantial change of circumstances of the children or their custodians—the Seedorffs—has occurred. It was error for the trial court to reach the visitation issue on remand, in light of the Supreme Court's order that simply stated it should reinstate the original custody provisions, particularly where, as here, it did so based on evidence so old that it was simply not possible for the court to determine whether the ordered changes in visitation were in the best interests of the children.

## VI. MR. SEARCY'S VISITATION

Mr. Searcy argues that there is no basis for denying him unrestricted visitation privileges with his daughters. He presents us a number of reasons why he took his children from Mr. Kennedy's home in 1994, and he argues that the weight of the evidence demonstrates that he would not harm his daughters if they were permitted to visit him unsupervised today. Again, however, any decision to do so would be beyond the Supreme Court's mandate and

based on 30–month–old evidence. While Mr. Searcy's arguments that the restrictions on his visitation are based on a single, ill-advised but well-intended incident from many years ago and that there is no reason why he could not safely be given unsupervised visitation with his children now, if proved, would be compelling, they are not properly before us on this appeal. We presume that he has raised or will in the future raise these issues in a motion to modify filed in the trial court, at which point the trial court can determine whether it would be the best interests of the children to end the restrictions on Mr. Searcy's visitation, based on current evidence.

For all of the above reasons, we reverse and remand so that the court may reinstate the original decree's custody and visitation provisions. Our resolution of this appeal is not intended to limit the court's authority to grant a properly filed and supported motion to modify custody or visitation based on evidence that is adduced at a timely-held hearing.

Presiding Judge SMART, and Judge ELLIS, concur.