Susan M. CANNON (Randall),
Appellant,

v.

James R. CANNON, Respondent.

No. WD 72997.

Missouri Court of Appeals,
Western District.

Nov. 1, 2011.

William P. Nacy, for Appellant.

Clifford W. Cornell, for Respondent.

Before Division Three: JAMES E. WELSH, Presiding Judge, JAMES M. SMART, JR., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Susan Randall ("Mother") appeals from a judgment entered in the Circuit Court of Cole County modifying the visitation provisions of the decree dissolving her marriage to James Cannon ("Father"). In its judgment, the trial court dramatically increased Father's supervised visitation and included two, three, and fourteen-day supervised overnight periods. The trial court also approved Father's new wife as an appropriate supervisor. For the following reasons, the judgment is reversed.

This case was originally filed in 2006, and the circuit court first entered a judgment on February 13, 2008. That judgment was appealed directly to the Missouri Supreme Court, which reversed the judgment and remanded the case for further proceedings. *Cannon v. Cannon,* 280 S.W.3d 79 (Mo. banc 2009). The underlying facts were previously set out in the Missouri Supreme Court's opinion:

In June 1995, James Cannon married Susan Randall. At the time of their

marriage, Ms. Randall had a 10–year–old daughter, S.S., from a previous marriage. During the marriage, the couple had a daughter, M.C., and a son, A.C. Within a year of the marriage, the then 24–year–old Mr. Cannon allegedly began grooming then 11–year–old S.S. for sex. He began raping and sodomizing S.S. in November 1997, when she was 12, and continued to do so until he was arrested in July 1999.

Mr. Cannon initially denied his involvement and claimed that 11–year–old S.S. had made sexual advances towards him. He later admitted his crimes. In December 2000, but before Mr. Cannon pleaded guilty to his crimes, the parties dissolved their marriage. At the time of the dissolution, the law prohibited a person who had pleaded guilty to such sexual crimes from being awarded custody of the child-victim:

> The court shall not award custody of a child to a parent if such parent has been found guilty of, or pled guilty to, a felony violation of chapter 566, RSMo, *when the child was the victim*
> . . . .

Sec. 452.375.3, RSMo 2000 (emphasis added). Because defendant's victim, S.S., was not his child, this statute did not apply to Mr. Cannon. His rights to custody and visitation were instead determined under other Missouri statutes governing custody and visitation, including section 452.375.2, which provides, "The court shall determine custody in accordance with the best interests of the child." Section 452.375 creates a preference for joint custody and for frequent, continuing and meaningful contact of both parents with their child, but also provides that a court may limit or restrict such contact where it finds that this is in the best interest of the child. *Id.* That is what occurred at the time of the dissolution in this case. The trial court's December 2000 order determined that it was in the best interests of M.C. and A.C. that their mother, Ms. Randall, be awarded sole legal and physical custody of them and granted Mr. Cannon supervised visitation.

In January 2001, a month after the dissolution decree was entered, Mr. Cannon pled guilty to the felonies of first-degree statutory rape and first-degree statutory sodomy of his stepdaughter, S.S., in violation of section 566.032 and section 566.062, RSMo 1994, and was sentenced to seven years in prison. While in prison, Mr. Cannon completed the Missouri Sexual Offenders Treatment Program. Program directors recommended that, on his release, Mr. Cannon should be supervised when in the presence of underage females. Mr. Cannon was paroled in February 2004 and had supervised visitation with his children pursuant to the dissolution decree. In June 2005, the court modified the decree to allow a different person to supervise Mr. Cannon's visits. The modified decree continued to give Ms. Randall sole legal and physical custody of M.C. and A.C.

On September 18, 2006, Mr. Cannon filed a motion to modify in which he requested that the decree be modified to allow him unsupervised visitation with M.C. and A.C. gradually. At trial, [on December 3, 2007,] each party presented expert testimony regarding Mr. Cannon's diagnosis of Axis I pedophilia made in late 1999 at the psychiatric ward at St. John's Hospital after Mr. Cannon was caught and arrested. Dr. Bruce Harry, a forensic psychiatrist, testified for Ms. Randall and ultimately diagnosed Mr. Cannon as a pedophile.

In his diagnosis, Dr. Harry found that Mr. Cannon met the three identifiable diagnostic criteria for a pedophile. He

said that the three criteria include: (1) that the person "must have over a period of at least six months, recurrent, intense, sexually-arousing fantasies, sexual urges or behaviors involving sexual activity with a pre-pubescent—or children generally age 13 years or younger; (2) that the person has acted on these urges or that the urges caused marked distress or interpersonal difficulty; and (3) that the person ... is at least 16 years of age, and at least five years older than the child or children in criterion A.," but this criterion does not include "individuals in late adolescence who were involved in an ongoing sexual relationship with a 12 or 13–year–old." In Dr. Harry's opinion, Mr. Cannon is an incurable pedophile.

Dr. David B. Clark, a forensic psychologist, testified for Mr. Cannon that although he still may be a child molester, Dr. Clark did not consider him a pedophile. Dr. Clark acknowledged the three diagnostic criteria for pedophilia, but found that Mr. Cannon did not meet the first criterion—that a child be pre-pubescent—because pedophilia is "sexual attraction to children that are not sexually developed," and Mr. Cannon had reported to him that S.S. was "fully developed" during the period he raped and sodomized her, although she was younger than 13 years. There is no indication in the record that Dr. Clark attempted to verify this report.

Dr. Clark further testified that the distinction between "child molester" and "pedophile" is important, because "if you have somebody whose exclusive sexual attraction is to young children who are not sexually developed ... you've got big trouble. This is somebody who is going to be a high-risk;" if a person is a child molester, but is not a pedophile, that person has a "more positive prognosis for the future." As Mr. Cannon had

made changes in his life, Dr. Clark believed that he has a "very low" risk of re-offense, especially because he no longer suffers from serious psychological disorder and the offense happened "at a time when he was a very disturbed person."

The trial court noted that a modification of the decree to give Mr. Cannon unsupervised visitation or custody is precluded by an August 2005 amendment to section 452.375.3. As amended, the statute states:

> In any court proceeding relating to custody of a child, the court shall not award custody or unsupervised visitation of a child to a parent if such parent or any person residing with such parent has been found guilty of, or pled guilty to, any of the following offenses [which include sections 566.032 and 566.062] *when a child was the victim* ...

Sec. 452.375, RSMo Supp.2006 (emphasis added).

Article I, section 13 of Missouri's Constitution states "[t]hat no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation ... can be enacted." The trial court found that because this amendment was enacted after Mr. Randall's marriage was dissolved, it served "to 'retroactively' take away [his] fundamental right to associate with his own children ... without due process of law." It further concluded that the statute violated the equal protection clauses of the United States and Missouri constitutions as applied to Mr. Cannon because it impinged on his fundamental right "to associate with his own children and maintain a relationship with them." The court awarded Mr. Cannon joint legal

and physical custody, although he had not moved for a change in custody. *Id.* at 81–83.

As noted, *supra,* Ms. Randall appealed directly to the Missouri Supreme Court challenging the circuit court's finding that section 452.375 is unconstitutional. The Supreme Court reversed the trial court's award of joint custody and unsupervised visitation, concluding:

> [S]ection 452.375 does not violate Missouri's constitutional prohibition against laws retrospective in operation because it does not impair a vested right or create a new obligation, impose a new duty, or attach a new disability to past transactions. The statute also does not infringe Mr. Cannon's fundamental right to associate with his children; he still can maintain a relationship with his children, but is limited to supervised visitation, the same type of limit on visitation that has been in place since his marriage's dissolution. Mr. Cannon is not entitled to custody or unsupervised visitation with his children under section 452.375.3. That provision is not unconstitutional. Accordingly, the judgment of the trial court is reversed, and the case is remanded.

*Id.* at 89.

On remand, on June 9, 2010, the trial court conducted an evidentiary hearing limited to the issue of "the parameters of supervised visitation." On September 24, 2010, the trial court entered its judgment declaring that Mother "shall exercise the sole legal and physical custody of the minor children ..., pursuant to a specific schedule of supervised visitation between [Mr. Cannon] and the minor children...." The trial court found, however, that Father had been rehabilitated and did not pose a threat to the children. The trial court concluded that "[t]here is no restriction at law that supervised visitation can-

not occur on an overnight basis" and that "[s]upervised visitation on an overnight basis is in the best interests of the minor children." The trial court then specified a schedule of visitation identical to that contained in the trial court's prior judgment of February 13, 2008, which was reversed by the Supreme Court, except that in the prior judgment the time to be spent with Mr. Cannon was designated as "temporary custody," while the September 24, 2010 judgment referred to such time as "supervised temporary custody/visitation." Thus, the September 24, 2010 judgment awarded Mr. Cannon, at a minimum, "supervised" visitation every other weekend from 5:00 p.m. Friday evening to 5:00 p.m. Sunday evening. The Court also ordered "supervised" visitation for 24–hour or longer periods in an alternating rotational holiday schedule covering the Memorial Day and Labor Day weekends; the July 4th holiday; Thanksgiving; and Christmas. Finally, the court awarded "supervised" visitation for three (3) blocks of two (2) weeks each (for a total of six (6) weeks) every summer. The trial court also approved Father's current wife, Veronica Cannon; psychologist Dr. Barb Abshier; and Father's brother, William Cannon; as appropriate supervisors for Father's visitation.

Mother filed a timely notice of appeal and sought a stay of enforcement of the judgment with respect to custody and visitation pending this appeal, which was granted. Mother raises three points on appeal.

 "The judgment of the trial court modifying visitation will be affirmed on appeal 'unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Searcy v. Searcy,* 38 S.W.3d 462, 469 (Mo.App. W.D.2001) (quoting *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). "While we give great

deference to the trial court's assessment of what serves the best interests of the child, because it is in the better position to judge the credibility of the witnesses, ... as in any case concerning the modification of visitation rights, the paramount concern of this court is whether the order serves the best interests of the children." *Id.* (internal quotation omitted). We will reverse the trial court's judgment if this Court is "firmly convinced that the welfare and best interests of the child require otherwise." *Courtney v. Roggy,* 302 S.W.3d 141, 151 (Mo.App. W.D.2009).

In her first point, Mother claims that the trial court erred in granting Father additional supervised visitation because Father's motion had requested either sole legal and physical custody of the children or unsupervised visitation and did not reference an increase in supervised visitation. Mother further contends that the judgment was improperly entered because it was based upon evidence about the children and the parties that was 30 to 36 months old.

■ As to Mother's claim that the issue of increased supervised visitation was not before the court, Father's request that visitation be changed from supervised to unsupervised along with a request that visitation be increased can certainly be read to include an implicit request for increased supervised visitation if unsupervised visitation is denied. Moreover, "Rule 55.33(b) allows for the pleadings to conform to the evidence when issues not raised are tried by express or implied consent of the parties." *Downard v. Downard,* 292 S.W.3d 345, 350 (Mo.App. E.D.2009) (internal quotation omitted). The transcript of the original hearing on the motion to modify, which the trial court clearly considered in rendering its judgment, has not been included in the record on appeal, so this Court cannot determine whether the issue

of increased supervised visitation was tried by express or implied consent. As the Appellant, Mother bore the burden of filing a record sufficient to allow this Court to review her claims of error. *Coffman v. Coffman,* 300 S.W.3d 267, 271 n. 3 (Mo. App. W.D.2009). Absent a sufficient record, her claim cannot be reviewed. *Ratcliff v. Sprint Missouri, Inc.,* 261 S.W.3d 534, 549 (Mo.App. W.D.2008).

■ Mother's claim that the trial court erred in rendering a judgment on stale evidence, however, has merit. The record reflects that Father, the guardian *ad litem,* and the trial court all considered the designation of appropriate supervisors to be the sole issue before the court on remand. The trial court refused to allow testimony related to the best interest of the children, finding such testimony to be irrelevant. In so restricting the proceedings and the issues for its consideration, the trial court failed to correctly interpret the mandate of the Missouri Supreme Court and entered a judgment based on stale evidence, a practice this court rejected in *Searcy v. Searcy,* 38 S.W.3d 462, 471 (Mo.App. W.D.2001).

In reversing the trial court's prior judgment, the Missouri Supreme Court held that the trial court's judgment was erroneous because § 452.375 precluded any award of custody or unsupervised visitation to Father and that the provisions of § 452.375 were not unconstitutional. The Supreme Court's mandate provided that the judgment:

be reversed, annulled and for naught held and esteemed, and that [Mother] be restored to all thing which she has lost by reason of said judgment. It is further considered and adjudged by the court that the said cause be remanded to the said Circuit Court of Cole County for further proceedings to be had there-

in, in conformity with the opinion of this court herein delivered.

Accordingly, the merits of Father's motion to amend were pending before the circuit court in their entirety with all of Mother's rights restored and prior judgment still in effect.

In entering its judgment on September 24, 2010, the trial court had not heard or considered evidence related to the situation of the children subsequent to the original hearing on December 3, 2007, aside from the fact that the children had not seen Father or Veronica since March 2009 and Father's only contact with either child had been six phone calls to his son.[1] Moreover, the trial court found irrelevant the evidence related to Father's contact with the children since the prior judgment. The trial court also excluded from evidence any new testimony related to the best interests of the children finding such evidence likewise to be irrelevant. In conducting the hearing in this manner, the court clearly accepted Father's position, and that of the guardian *ad litem*, that the only issue before the court on remand was who should supervise the visitation that had already been awarded in the prior judgment. This was error. The mandate of the Supreme Court restored the case to the status quo *ante*, that being the status of the case and the parties prior to entry of the trial court's February 13, 2008 judgment, which the Supreme Court expressly "reversed, annulled and for naught held." The mandate simply did not limit the proceedings in the manner interpreted by the trial court. All of the issues related to whether to grant Father supervised visitation, the extent thereof, and the establishment of a visitation schedule were before the court, as the judgment in effect at the

time Father filed his motion to modify on September 18, 2006 had been restored in its entirety.

In this regard, under § 452.400.2(1), a "court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child." Since the evidence the court heard related to the situation of the children and the parties was over 34 months old, "the court could not know based on the record before it that a change in visitation was in the best interests of the children, for it simply did not know what their current situation was." *Searcy*, 38 S.W.3d at 471. "As a matter of logic and common sense, a court cannot accurately determine the best interests of the children based solely on evidence presented at a hearing that occurred more than two-and-one-half years prior to its order." *Id.* "[O]rders concerning custody or visitation should not be made based on stale evidence from long-concluded hearings." *Id.* Thus, the trial court's erroneous interpretation of the Supreme Court's mandate, and consequent erroneous preclusion of current evidence relating to the best interests of the children, was compounded by its erroneous reliance on stale evidence heard nearly three years earlier. Accordingly, the judgment must be reversed and remanded for consideration of more current evidence on all relevant matters relating to supervised visitation between Father and the children. While this alone requires reversal of the trial court's judgment, Mother's remaining points merit consideration as they are likely to arise again on remand.

In her second point, Mother claims that the trial court erred in approving each of the three named supervisors because

---

1. The guardian *ad litem* testified that he had not had any contact with the children or the parties since the original hearing on December 3, 2007. Dr. Abshier had not had any contact with them in over a year.

the record demonstrates that they were either unwilling or incapable of performing that function. Section 452.400.2(3) states that " '[s]upervised visitation', as used in this section, is visitation which takes place in the presence of a responsible adult appointed by the court for the protection of the child." Accordingly, a supervisor appointed by the court must be a responsible adult, must be able to be in the presence of the child throughout the visitation, and must be able to protect the child.

The evidence at trial reflected that William Cannon had not been able to supervise visitation in over a year and a half due to his teaching, coaching, and refereeing schedule and that his schedule never allowed him to supervise on weekends. The evidence further reflected that Dr. Abshier, though willing to supervise visitation if her health would ever again allow it, had not been able to supervise visitation in over a year as a result of her cancer diagnosis and chemo therapy treatment. She further stated that her doctors had told her that she had reached a point where her therapy was probably going to make her even sicker. While this evidence certainly calls into question the availability of either William Cannon or Dr. Abshier for supervised visitation, no evidence was presented that either of these previously approved supervisors were not responsible adults that could sufficiently protect the children if and when available. The trial court cannot be deemed to have erred in approving these individuals as appropriate supervisors.

The naming of Father's wife, Veronica, as a supervisor is another matter entirely. Section 452.375.3(1)(a) provides that "[i]n any proceedings relating custody of a child, the court shall not award unsupervised visitation of a child to a parent *if such parent or any person residing with such parent* has been found guilty of, or pled guilty to, any of the following offenses when a child was the victim: [including §§ 566.032 and 566.062]." (Emphasis added.) Similarly, § 452.400.1(2)(a) states that "[t]he court shall not grant visitation to the parent not granted custody *if such parent or any person residing with such parent* has been found guilty of or pled guilty to any of the following offenses when a child was the victim: [including §§ 566.032 and 566.062]." (Emphasis added.) Likewise, § 452.400.2(2)(a) provides that "[i]n any proceeding modifying visitation rights, the court shall not grant unsupervised visitation to a *parent if the parent or any person residing with such parent* has been found guilty of or pled guilty to any of the following offenses when a child was the victim: [including §§ 566.032 and 566.062]." (Emphasis added.) With these statutes, the legislature has clearly, consistently, and convincingly enunciated the policy of the State of Missouri to be that a parent is unfit to have custody or unsupervised visitation with his or her children *if that parent or any person residing with that parent* has pled guilty to, as Father in this case clearly did, violating §§ 566.032 or 566.062. Accordingly, pursuant to §§ 452.375.3(1)(a), 452.400.1(2)(a) and 452.400(2)(a), a court in any custody proceeding, original or otherwise, or in any proceeding to modify visitation could not grant Veronica custody of or unsupervised visitation with her own children, because *Veronica is a parent residing with an individual (Father) who has previously pleaded guilty to two of the listed offenses.* By virtue of these statutory provisions, the legislature has declared that Veronica is not capable of adequately protecting *her own children* from Father without supervision by a third party. It follows, then, that, if Veronica is deemed unfit under §§ 452.375.3(1)(a), 452.400.1(2)(a) and 452.400(2)(a) to have

custody of, or unsupervised visitation with, her own children, she certainly cannot be deemed a responsible adult that can sufficiently supervise and provide protection for Father's children.

In short, it is clear from these statutes that supervision for visitation cannot be provided by an individual convicted of one of the listed offenses or a person residing with a person convicted of one of those offenses. The trial court erred as a matter of law in finding Veronica to be a proper supervisor for Father's visitation.

■ In her final point, Mother asserts that the trial court's award of overnight, supervised visitation was erroneous because Missouri law does not allow for supervised, overnight visitation and because no evidence was presented that any of the named supervisors could adequately supervise an overnight visit. Mother is correct in both respects.

The Southern District of this Court observed in *J.P. v. P.W.*, 772 S.W.2d 786, 794 (Mo.App. S.D.1989) that "supervised overnight visitation and supervised visitation for such extended periods of ten days is impractical." This Court has reached a similar conclusion, holding that supervised overnight visitation is impractical and unworkable. *Searcy*, 38 S.W.3d at 472. The case at bar illustrates this point.

Section 452.400.2(3) requires that the children remain in the presence of the supervisor throughout the visitation and that the supervisor be able to provide immediate and effective protection for the child over the entire period. No evidence was presented whatsoever that would indicate that either William Cannon or Dr. Abshier would be able or willing to supervise the children overnight or for periods of two to fourteen days. The only supervisor named in the judgment with any likelihood of being available for such visitation was Father's wife, Veronica, who, as noted

*supra,* is not qualified to be a supervisor. Moreover, even if she were qualified to supervise the children, no evidence was presented regarding how Veronica, with a toddler and teenager of her own in the house, could remain awake, alert, vigilant, and in the presence of Father's two children throughout the entirety of any overnight visitation, let alone a period of two to fourteen days. *See Id.* at 472 (noting that it is unrealistic to expect that a spouse can supervise the visitation of the other spouse over the entire course of an overnight visitation). Overnight visitation, especially where it is for multiple days, would require multiple, qualified supervisors, working in shifts. Such a situation is clearly impractical, and, absent clear evidence of a workable manner in which adequate supervision would be provided, overnight and/or extended supervised visitation should not be awarded. Accordingly, the trial court erred in granting Father overnight visitation in this case.

The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

All concur.